IN THE

# United States Court of Appeals for the Federal Circuit

JOE A. LYNCH,

*Claimant-Appellant,*

*v.*

ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,

*Respondent-Appellee.*

Appeal from the United States Court of Appeals for Veterans Claims,
Judge Schoelen in Case No. 19-3106

## BRIEF OF MILITARY-VETERANS ADVOCACY INC.
## AS AMICUS CURIAE IN SUPPORT OF APPELLANT

John B. Wells
MILITARY-VETERANS ADVOCACY INC.
P.O. Box 5235
Slidell, LA 70469-5235

Melanie L. Bostwick
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

*Counsel for Amicus Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 20-2067 |
| **Short Case Caption** | Joe A. Lynch v. Robert Wilkie, Secretary of Veterans Affairs |
| **Filing Party/Entity** | Military-Veterans Advocacy Inc. |

---

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/02/2020

Signature: /s/ Melanie L. Bostwick

Name: Melanie L. Bostwick

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Military-Veterans Advocacy Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑  None/Not Applicable          ☐  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑  None/Not Applicable          ☐  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .................................................................. i

TABLE OF AUTHORITIES ...................................................................... v

STATEMENT OF INTEREST ................................................................. 1

INTRODUCTION ...................................................................................... 2

ARGUMENT ............................................................................................... 4

    I.    This Court And The Veterans Court Have Read The Word "Approximate" Out Of 38 U.S.C. § 5107(b). ................. 4

        A.    This Court, the Veterans Court, and the VA have required evidence to be evenly balanced, rather than approximately balanced, before the veteran receives the benefit of any doubt. .................................. 5

        B.    The "evenly balanced" rule, and the corresponding preponderance of the evidence standard for the VA, allocates risk to veterans that should be borne by the government. .................... 10

    II.    The Prevailing Understanding Of "Approximate Balance" Is Contrary To The Text And History Of § 5107(b) And Contrary To Its Pro-Veteran Purpose. ......... 14

CONCLUSION ...................................................................................... 22

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Addington v. Texas,*
    441 U.S. 418 (1979) ................................................................. 13

*Boone v. Lightner,*
    319 U.S. 561 (1943) ................................................................. 15

*Chotta v. Peake,*
    22 Vet. App. 80 (2008) .............................................................. 8

*Crabtree v. Shinseki,*
    No. 13-1340, 2014 WL 1088921 (Vet. App. Mar. 20, 2014) ............... 10

*Dir., Office of Workers' Comp. Programs v. Greenwich*
    *Collieries,*
    512 U.S. 267 (1994) ................................................................... 7

*Fagan v. Shinseki,*
    573 F.3d 1282 (Fed. Cir. 2009) .................................................... 7

*Faggard v. Shinseki,*
    No. 13-0059, 2014 WL 1612253 (Vet. App. Apr. 23, 2014) ................ 10

*Fishgold v. Sullivan Drydock & Repair Corp.,*
    328 U.S. 275 (1946) ................................................................. 18

*Gilbert v. Derwinski,*
    1 Vet. App. 49 (1991) ................................................. 2, 4, 19, 20

*Hayes v. Brown,*
    5 Vet. App. 60 (1993) ............................................................... 11

*Henderson ex rel. Henderson v. Shinseki,*
    562 U.S. 428 (2011) ............................................................. 4, 15

*Herman & MacLean v. Huddleston,*
    459 U.S. 375 (1983) ............................................................ 11, 13

*Hodge v. West,*
    155 F.3d 1356 (Fed. Cir. 1998) .......................................................... 18

*Holland v. Wilkie,*
    No. 18-1315, 2019 WL 347672 (Vet. App. Jan. 29, 2019).............. 8, 10

*Jackson v. Veterans Admin.,*
    768 F.2d 1325 (Fed. Cir. 1985) .......................................................... 11

*Jones v. Shinseki,*
    23 Vet. App. 382 (2010)........................................................................ 8

*Kirkendall v. Dep't of Army,*
    479 F.3d 830 (Fed. Cir. 2007) ............................................................ 15

*Kisor v. Wilkie,*
    969 F.3d 1333 (Fed. Cir. 2020) .......................................................... 17

*LaLonde v. Sec'y of Health & Human Servs.,*
    746 F.3d 1334 (Fed. Cir. 2014) .......................................................... 11

*Lancaster v. Peake,*
    292 F. App'x 66 (Fed. Cir. 2008)......................................................... 7

*Lego v. Twomey,*
    404 U.S. 477 (1972) ..................................................................... 14, 18

*Mariano v. Principi,*
    17 Vet. App. 305 (2003)...................................................................... 21

*Mayhue v. Shinseki,*
    24 Vet. App. 273 (2011)................................................................... 8, 11

*Moreno v. Shinseki,*
    No. 07-1801, 2009 WL 497365 (Vet. App. Feb. 27, 2009).................... 8

*Ortiz v. Principi,*
    274 F.3d 1361 (Fed. Cir. 2001) ................................ 2, 6, 7, 8, 10, 12, 20

*Parker v. Wilkie,*
    No. 18-5272, 2019 WL 4605721 (Vet. App. Sept. 24, 2019) ............... 10

*Procopio v. Wilkie*,
913 F.3d 1371 (Fed. Cir. 2019) ................................................. 16, 17, 21

*Rucker v. Brown*,
10 Vet. App. 67 (1997).................................................................. 8

*Santosky v. Kramer*,
455 U.S. 745 (1982) ...................................................................... 18

*Sargent v. Mass. Accident Co.*,
307 Mass. 246 (1940) ................................................................... 12

*SAS Inst., Inc. v. Iancu*,
138 S. Ct. 1348 (2018)................................................................. 17

*Sateren v. Shinseki*,
No. 08-3858, 2010 WL 2978290 (Vet. App. July 26, 2010)................... 8

*Skoczen v. Shinseki*,
564 F.3d 1319 (Fed. Cir. 2009) ..................................................... 7

*Thompson v. McDonald*,
580 F. App'x 901 (Fed. Cir. 2014) ................................................. 7

*Turpin v. Merrell Dow Pharm., Inc.*,
959 F.2d 1349 (6th Cir. 1992) ....................................................... 12

*United States v. Diaz*,
344 F. App'x 36 (5th Cir. 2009) .................................................... 12

*Warner Lambert Co. v. Teva Pharm. USA, Inc.*,
418 F.3d 1326 (Fed. Cir. 2005) .................................................... 11

*In re Winship*,
397 U.S. 358 (1970) ..................................................................... 12, 19

**Statutes**

38 U.S.C. § 1116................................................................................ 21

38 U.S.C. § 5107(a) .......................................................................... 4

38 U.S.C. § 5107(b) ................................................................ *passim*

38 U.S.C. § 7292(d) ................................................................ 21

**Regulations**

38 C.F.R. § 3.102 ................................................................... 16

**Other Authorities**

Chris Attig, *The VA Benefit of the Doubt Rule Only Matters When Your Case Is Too Close To Call*, Veterans Law Blog, https://tinyurl.com/y5a74a3y ................................................. 9

Shannon Brewer, *VA Benefits: Isn't the VA Supposed To Give Me The Benefit of the Doubt*, Hill & Ponton (May 5, 2016), https://tinyurl.com/y36l54je ................................................. 9

Mark Dewdney, *"Come on, Blue: Tie Goes to the Runner!" No, It Does Not*, Bleacher Report (July 27, 2009), https://tinyurl.com/y4zfe4e3 ................................................ 20

Major League Baseball Playing Rules Committee, Official Baseball Rules (2019 ed.) ......................................................... 20

NickG, *Tie Goes to the Runner?*, UmpireBible (Sept. 6, 2017), https://tinyurl.com/y4j69v5u ............................................... 20

S. Rep. No. 100-418 (1988) ............................................... 15, 17

*VA's Benefit of the Doubt Doctrine*, Chisholm Chisholm & Kilpatrick Ltd. (Aug. 31, 2018), https://tinyurl.com/y4s43n37 ................................................ 9

*Webster's New World Dictionary* (3d ed. 1993) ......................... 6

# STATEMENT OF INTEREST[1]

Military-Veterans Advocacy Inc. (MVA) is a non-profit
organization that litigates and advocates on behalf of service members
and veterans. Established in 2012 in Slidell, Louisiana, MVA educates
and trains service members and veterans concerning rights and
benefits, represents veterans contesting the improper denial of benefits,
and advocates for legislation to protect and expand service members'
and veterans' rights and benefits. It also provides continuing legal
education to attorneys practicing in the field of veterans' and service
members' rights and benefits.

This case involves a question that has the potential to affect every
individual seeking veterans' benefits from the VA: the proper
application of the benefit-of-the-doubt rule, which privileges the
claimant when the evidence on any material issue is in "approximate
balance." 38 U.S.C. § 5107(b). That principle recognizes the difficulty
that veterans face in proving matters that can be fraught with both

---

[1] No party's counsel authored this brief in whole or in part. No party,
party's counsel, or any person other than amicus or its counsel
contributed money intended to fund preparing or submitting this brief.
All parties have consented to the filing of this brief.

1

historical and medical uncertainty. It also reflects a societal judgment that it is better to err on the side of providing benefits to those who sacrificed their own interests on behalf of the nation. Under current law, however, that judgment is not being given meaningful effect. MVA has an interest in seeing that § 5107(b) is interpreted and applied consistent with its text, with the intent of Congress, and with the pro-veteran purpose behind it.

## INTRODUCTION

Like countless veterans before him, Joe Lynch provided the VA with evidence supporting his claim to benefits—in this case, an increased rating for his disabling post-traumatic stress disorder incurred as a result of his service in the United States Marine Corps. When the evidence on such claims is mixed, "[b]y tradition and by statute, the benefit of the doubt belongs to the veteran." *Gilbert v. Derwinski*, 1 Vet. App. 49, 54 (1991).

But Mr. Lynch wasn't given the benefit of the doubt, because the VA and the Veterans Court applied the flawed understanding of 38 U.S.C. § 5107(b) that has prevailed since this Court's decision in *Ortiz v. Principi*, 274 F.3d 1361 (Fed. Cir. 2001). Although it purported to

give effect to the statutory language that benefits the veteran whenever the positive and negative evidence on an issue are in "approximate balance," the *Ortiz* panel announced a rule that has been understood to apply only when there is an *even* balance of proof, and that has allowed the VA to defeat a claim by showing nothing more than a bare preponderance of evidence in its own favor.

As demonstrated by Mr. Lynch and as discussed further below, that rule is contrary to the clear statutory text, particularly when read (as it must be) in light of Congress's pro-veteran purpose. That may not have been the *Ortiz* panel's intent; this Court's decision contains statements that appear contradictory. If this Court determines that *Ortiz* is being misapplied, it should clarify that ruling and ensure that the benefit-of-the-doubt rule is applied correctly. But if this Court determines that the *Ortiz* panel meant what it appeared to say, it should accept Mr. Lynch's invitation to hear this appeal en banc, overrule *Ortiz*, and adopt an interpretation of § 5107(b) that restores the traditional benefit of the doubt provided to veterans' benefits claimants.

# ARGUMENT

## I.    This Court And The Veterans Court Have Read The Word "Approximate" Out Of 38 U.S.C. § 5107(b).

In 1988, Congress codified a principle that had long been applied in veterans' benefits adjudications: the rule that a claimant receives the benefit of evidentiary doubt.  The claimant retains "the responsibility to present and support a claim for benefits."  38 U.S.C. § 5107(a).  But "[w]hen there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant."  *Id.* § 5107(b).

This "unique standard of proof" is meant to lie "at the farthest end of the spectrum" of possibilities in administrative or civil procedure.  *Gilbert*, 1 Vet. App. at 54.  It is one of the "singular characteristics of the review scheme that Congress created for the adjudication of veterans' benefits claims," reflecting the longstanding solicitude for veterans and "'plac[ing] a thumb on the scale in the veteran's favor.'"  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 440 (2011) (citation omitted).

This Court has taken that thumb off the scale and replaced it with a feather. The *Ortiz* panel essentially eliminated the word "approximate" from the statute, allowing the benefit-of-the-doubt doctrine to come into play only when the evidentiary scales are balanced precisely and it is impossible to say who has the edge, the veteran or the VA. And, by allowing the VA to prevail when it tips the scales only just enough to show a preponderance of evidence, the *Ortiz* panel ensured that the statutory benefit-of-the-doubt rule will have only minimal (if any) effect, leaving most of the risk of factual error on the veteran.

**A.** **This Court, the Veterans Court, and the VA have required evidence to be evenly balanced, rather than approximately balanced, before the veteran receives the benefit of any doubt.**

This Court interpreted § 5107(b) in its 2001 *Ortiz* decision. As Mr. Lynch explains, the *Ortiz* panel recognized that the statute requires only an "*approximate* balance" of proof to invoke the benefit-of-the-doubt rule in favor of the veteran. 38 U.S.C. § 5107(b) (emphasis added); *see* Appellant's Br. 16. And, indeed, the panel began by acknowledging that the modifier "approximate" has a connotation of being close to, but not exactly, the noun that is being modified. *See*

*Ortiz*, 274 F.3d at 1364 (citing dictionary definitions of "almost exact," "close to," "more or less," and to "approach or almost be the same").

But the panel didn't actually impose that modification on the statutory noun "balance." It instead analogized to the mythical rule of baseball that the "tie goes to the runner," suggesting that the veteran receives the benefit of the doubt only when the evidence is "too close to call"—that is, when one cannot tell which way (if any) the scale is tipping. *Id.* at 1365. It did so even while recognizing that this is the definition of the unmodified statutory term "balance"—which means that evidence is in "a state of equilibrium or equipoise." *Id.* at 1364 (quoting *Webster's New World Dictionary* 104 (3d ed. 1993)). The panel did not identify any difference between this meaning of the term "balance" and its interpretation of the term "approximate balance."

The panel seemed to think it was giving effect to the word "approximate," and at times it used language consistent with such an outcome—observing that the evidence should be "almost" or "nearly" equal, for example. *Id.* At the same time, however, the panel seemed to contradict that notion of near-equality. It likened its interpretation of § 5107(b) to the "true doubt" rule formerly applied in certain labor

cases, which allowed the claimant to prevail if the evidence was "*evenly balanced.*" *Id.* at 1365 (emphasis added); *see Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 281 (1994). And it offered an extended comparison to the non-existent baseball rule, analogizing to the situation where "it appears that (but is unclear whether) the runner and the ball arrived at the base at the same time," and invoking the concept of a "tie" that must break one way or the other. *Id.* In doing so, the panel left a clear impression that the benefit-of-the-doubt rule comes into play only when the evidence on a given issue is *perfectly* balanced, at least to the eye of the observer.

Regardless of what the *Ortiz* panel intended, its words have been taken to mean exactly that. This Court, citing *Ortiz*, has repeatedly observed that "the evidence must rise to a state of equipoise for the claimant to 'win.'" *Skoczen v. Shinseki*, 564 F.3d 1319, 1324 (Fed. Cir. 2009) (describing the rule as an "equality of the evidence" standard); *see also, e.g.*, *Thompson v. McDonald*, 580 F. App'x 901, 906 (Fed. Cir. 2014); *Fagan v. Shinseki*, 573 F.3d 1282, 1287 (Fed. Cir. 2009); *Lancaster v. Peake*, 292 F. App'x 66, 67-68 (Fed. Cir. 2008). But, as the *Ortiz* panel recognized, when two things are in "equipoise" they are not

nearly or almost balanced: they are, in fact, balanced. 274 F.3d at 1364 (citing dictionary definitions of "balance" to include "a state of equilibrium or equipoise"). The "equipoise" standard thus leaves no room for the concept of an approximate balance.

The Veterans Court has applied *Ortiz* in this narrow fashion as well. In case after case, it has articulated the threshold for giving the veteran the benefit of the doubt as an "equipoise" of the evidence. *See, e.g.*, *Jones v. Shinseki*, 23 Vet. App. 382, 388 n.1 (2010); *Chotta v. Peake*, 22 Vet. App. 80, 86 (2008); *Rucker v. Brown*, 10 Vet. App. 67, 73 (1997). And it has upheld the Board's refusal to give the veteran the benefit of the doubt on the ground that the evidence was "not in equipoise." *See, e.g.*, *Holland v. Wilkie*, No. 18-1315, 2019 WL 347672, at *2 (Vet. App. Jan. 29, 2019); *Mayhue v. Shinseki*, 24 Vet. App. 273, 282 (2011); *Sateren v. Shinseki*, No. 08-3858, 2010 WL 2978290, at *5 (Vet. App. July 26, 2010); *Moreno v. Shinseki*, No. 07-1801, 2009 WL 497365, at *1 (Vet. App. Feb. 27, 2009).

Unsurprisingly given this consistent characterization, even veterans' advocates admonish their clients that the benefit-of-the-doubt rule requires a veteran to establish his or her claim to at least a 50%

likelihood—that is, to supply enough proof to evenly balance the evidentiary scales. *See, e.g.*, Chris Attig, *The VA Benefit of the Doubt Rule Only Matters When Your Case Is Too Close To Call*, Veterans Law Blog, https://tinyurl.com/y5a74a3y (last visited Oct. 29, 2020) (advising that "[t]here has to be a tie" before the benefit-of-the-doubt rule can apply); *VA's Benefit of the Doubt Doctrine*, Chisholm Chisholm & Kilpatrick Ltd. (Aug. 31, 2018), https://tinyurl.com/y4s43n37 (advising that the rule "only applies if there is a balance of the evidence"); Shannon Brewer, *VA Benefits: Isn't the VA Supposed To Give Me the Benefit of the Doubt*, Hill & Ponton (May 5, 2016), https://tinyurl.com/y36l54je (advising that there must be "a 50/50 chance" that the veteran's claim is correct for the benefit-of-the-doubt rule to apply).

Under current law and practice, then, the word "approximate" might as well not appear in § 5107(b).  Contrary to the statutory text, a veteran is given the benefit of the doubt only when the VA determines that there is a "balance" of evidence.

**B.     The "evenly balanced" rule, and the corresponding preponderance of the evidence standard for the VA, allocates risk to veterans that should be borne by the government.**

This "even balance" rule is also clear from the Veterans Court's frequent reference to a one-sided preponderance of the evidence standard in connection with applying § 5107(b).  As Mr. Lynch explains, the VA holds itself to this preponderance standard to disprove a claim.  Appellant's Br. 15-16.  This Court set that standard in *Ortiz*.  274 F.3d at 1364.  And the Veterans Court has readily adopted it, deeming it "well established that the benefit of the doubt is not applicable where the Board properly determines that the preponderance of the evidence is against a claim."  *Faggard v. Shinseki*, No. 13-0059, 2014 WL 1612253, at *2 (Vet. App. Apr. 23, 2014).

That is why the Board here refused to afford Mr. Lynch the benefit of the doubt, and why the Veterans Court upheld that refusal.  *See* Appx7.  And there are legions of similar cases in which the claimant has been denied the benefit of the doubt on the basis that the VA has proven an issue by a mere preponderance of evidence.  *See, e.g.*, *Parker v. Wilkie*, No. 18-5272, 2019 WL 4605721, at *2 (Vet. App. Sept. 24, 2019); *Holland*, 2019 WL 347672, at *3; *Crabtree v. Shinseki*, No. 13-

1340, 2014 WL 1088921, at *1 (Vet. App. Mar. 20, 2014); *Mayhue*, 24 Vet. App. at 282; *Hayes v. Brown*, 5 Vet. App. 60, 70 (1993).

The use of the one-sided preponderance standard confirms that doubt is resolved in favor of the veteran only when there is an even, 50-50 balance of proof. Proof by a preponderance of the evidence merely means showing that a particular proposition is "more likely than not." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983); *see also, e.g.*, *LaLonde v. Sec'y of Health & Human Servs.*, 746 F.3d 1334, 1339 (Fed. Cir. 2014) (describing preponderance standard in Vaccine Act cases); *Warner Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 & n.15 (Fed. Cir. 2005) (in proving patent infringement); *Jackson v. Veterans Admin.*, 768 F.2d 1325, 1332 (Fed. Cir. 1985) (in Merit Systems Protection Board removal cases). If there is just enough evidence to tip the scales ever so slightly against the veteran, the benefit-of-the-doubt rule will not apply, and the issue will be decided against the veteran. The only "doubt" that can be resolved in favor of the veteran is uncertainty about which way to tip an evenly balanced scale.

Here again, this may have been an unintended consequence of the *Ortiz* ruling. The panel seemed to suggest that placing a preponderance standard on the VA might require something other than simply tipping the scales by a hair. It asserted that the concept of the standard as a "'fifty-one percent/forty-nine percent' rule" was a mischaracterization. *Ortiz*, 274 F.3d at 1365. *But see, e.g.*, *United States v. Diaz*, 344 F. App'x 36, 43 (5th Cir. 2009) (explaining preponderance standard as requiring 51% proof); *Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1357 & n.2 (6th Cir. 1992) (same). But it relied for that notion on a concurring opinion by a single Supreme Court justice that, in any event, criticized only an undue focus on the quantity (versus the quality) of evidence. *See In re Winship*, 397 U.S. 358, 371 n.3 (1970) (Harlan, J., concurring).[2] That is beside the point. The quantum of *proof*—that is, of *persuasion*—still need only be just enough to make the

---

[2] The panel also cited a case applying Massachusetts law, which of course has no application in the federal system. Regardless, that case similarly distinguished between the weight versus the mere quantity of evidence, without suggesting that the probative weight need be anything more than a bare majority. *See Sargent v. Mass. Accident Co.*, 307 Mass. 246, 250 (1940).

disputed issue more likely than not.  Anything beyond an even balance will do.  The *Ortiz* Court neither said nor cited anything to the contrary.

Of course, the task of weighing evidence is not a mathematical exercise but a subjective one.  But behind the abstract notions of percentages and scales lies a real, meaningful distinction between a rule that favors the veteran only when the evidence is in equipoise in the eyes of the factfinder and one that favors the veteran when his or her proof comes close to that state of equilibrium but does not quite reach it.

As the Supreme Court has explained, a standard of proof is essentially a judgment about which party should bear the risk of a factfinder getting things wrong in a case with mixed evidence.  "The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington v. Texas*, 441 U.S. 418, 423 (1979).  Under a preponderance standard, litigants "share the risk of error in roughly equal fashion." *Id.*  Society has "a minimal concern" in the outcome of disputes governed by this standard, *id.*, so the standard need not "express[] a preference for one side's interests."  *Huddleston*, 459 U.S. at 390.

The practical effect of putting a mere preponderance standard on the VA, then, is to require the veteran claimant to shoulder much of the risk of error. When the VA can prove a proposition by only a bare majority of persuasive effect, there will necessarily be a significant number of veteran losses that do not reflect the truth. *See, e.g.*, *Lego v. Twomey*, 404 U.S. 477, 493 (1972) (Brennan, J., dissenting) ("I do not think it can be denied … that permitting a lower standard of proof will necessarily result in the admission of more involuntary confessions than would be admitted were the prosecution required to meet a higher standard.") (criticizing use of preponderance standard for judging admissibility of allegedly involuntary confessions). And the only solace § 5107(b) provides to the veteran is that, in the narrow circumstance where the VA factfinder deems the proof perfectly balanced, the "tie" goes to the veteran rather than (as in ordinary civil litigation) to the VA. *See supra* 11.

## II. The Prevailing Understanding Of "Approximate Balance" Is Contrary To The Text And History Of § 5107(b) And Contrary To Its Pro-Veteran Purpose.

This status-quo understanding of the benefit-of-the-doubt rule is contrary to law. It is contrary to the text of the statute, which requires

not a perfect or an even balance but an "approximate" one. 38 U.S.C. § 5107(b); *see* Appellant's Br. 15-20. It is contrary to congressional intent, as reflected in the legislative history cited by Mr. Lynch. *See* Appellant's Br. 30. Congress wanted veterans to receive the benefit of the doubt unless the VA "*clearly* refuted" an issue. S. Rep. No. 100-418, at 33 (1988) (emphasis added). Instead, under *Ortiz* and its progeny, veterans are deprived of that benefit even when the VA offers only a bare preponderance of proof against a claim.

The *Ortiz* interpretation also fails to take account of the longstanding rule that statutes benefitting veterans must "be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone v. Lightner*, 319 U.S. 561, 575 (1943). The Supreme Court and this Court have long recognized this "canon that veterans' benefits statutes should be construed in the veteran's favor." *Kirkendall v. Dep't of Army*, 479 F.3d 830, 843 (Fed. Cir. 2007) (en banc); *see Henderson*, 562 U.S. at 441. The canon reflects a judgment "that those who served their country are entitled to special benefits from a grateful nation," and it requires courts to read veterans' benefits statutes with that "equitable

obligation" in mind. *Procopio v. Wilkie*, 913 F.3d 1371, 1386-87 (Fed. Cir. 2019) (en banc) (O'Malley, J., concurring).

But this Court has not reached agreement on the specifics of applying that canon to any given question of statutory interpretation. This case presents an opportunity to do so. It is clear that the word "approximate" must be given meaning, but it may not be perfectly clear what counts as an "approximate balance of positive and negative evidence." 38 U.S.C. § 5107(b). And, given the imperfect ability of linguistic formulations like "preponderance of the evidence" and the subjective judgments involved in applying such formulations in practice, it may not be perfectly clear whether the statute demands a broader application of the benefit-of-the-doubt rule than the "even balance" approach offered by *Ortiz*. Indeed, the VA may well argue in response that the statute is ambiguous, and that it should receive deference to its own interpretation (either the regulatory formulation set out in 38 C.F.R. § 3.102, or the nuances of its application by the Board).

The pro-veteran canon, properly applied as a tool of interpretation, makes indisputable that the statutory benefit-of-the-

doubt rule must have a more substantial role than the one permitted by *Ortiz* and by current VA practice. As at least some members of this Court have recognized, "the pro-veteran canon must be weighed alongside the other traditional tools in resolving interpretive doubt" and "must precede deference to the agency." *Kisor v. Wilkie*, 969 F.3d 1333, 1344 (Fed. Cir. 2020) (Reyna, J., dissenting); *see also Procopio*, 913 F.3d at 1383 (O'Malley, J., concurring); *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018) (explaining that all traditional tools of statutory construction are applied before determining whether an agency is owed deference to its interpretation of an ambiguous statute).[3]

In applying the canon, the Court must "discern the remedial purpose of a veterans' benefit provision in the context of the veterans' benefit scheme as a whole and ensure that [its] construction effectuates, rather than frustrates, that purpose." *Kisor*, 969 F.3d at 1344 (Reyna, J., dissenting). Here, the remedial purpose of § 5107(b) is to ensure that the government, not the veteran, bears the risk of factual error when the evidence does not clearly favor one side or the other. *See* S.

---

[3] Indeed, much like the benefit-of-the-doubt rule itself, the canon should not be used "as solely a tiebreaker of last resort." *Kisor*, 969 F.3d at 1344 (Reyna, J., dissenting).

Rep. No. 100-418, at 33. That kind of risk-allocation is the function of rules regarding the standard of proof. *See supra* Part I.B. And the selection of the proper standard is based on "a societal judgment about how the risk of error should be distributed between the litigants." *Santosky v. Kramer*, 455 U.S. 745, 755 (1982).

The pro-veteran canon reminds us that, in allocating that risk, Congress was effectuating the societal judgment that infuses this area of law and ensures that the veterans' benefits system remains "strongly and uniquely pro-claimant." *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998); *see also, e.g.*, *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) ("This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need.").

The *Ortiz* rule, at least as it has been applied, does not serve that aim. As explained in Part I.B above, even when the VA proves a material issue by a preponderance of the evidence, substantial doubt can remain about the correctness of a pro-VA finding. That is the nature and, indeed, the purpose of the preponderance standard. *See Lego*, 404 U.S. at 494 (Brennan, J., dissenting) ("If we permit the

prosecution to prove by a preponderance of the evidence that a confession was voluntary, … we must be prepared to justify the view that it is no more serious in general to admit involuntary confessions than it is to exclude voluntary confessions."); *Winship*, 397 U.S. at 371 (Harlan, J., concurring) (observing that the preponderance standard applies in civil litigation because "we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor"). By failing to resolve that doubt in the veteran's favor on the ground that the positive and negative evidence is not in "equipoise," the *Ortiz* approach conflicts with Congress's judgment reflected in the statutory text and with society's judgment reflected in the pro-veteran canon.

As the Veterans Court has recognized, the standard of proof in veterans' benefits cases is meant to be more generous than the preponderance standard applied in civil litigation. *See Gilbert*, 1 Vet. App. at 54 ("The statutory 'benefit of the doubt' standard of proof for cases dealing with veterans benefits is at the farthest end of the spectrum, beyond even the 'fair preponderance' standard."). But the only marginal benefit provided under *Ortiz* is that a "tie" goes to the

veteran notwithstanding the fact that he or she bears the overall burden of proof. That narrow interpretation of "approximate balance" is not consistent with carrying out the remedial purpose of § 5107(b).

Indeed, even that marginal benefit is likely illusory in practice, or at least too easily negated. The irony of *Ortiz*'s analogy to baseball is that there is, of course, no rule that the "tie goes to the runner," because the very concept of a tie is anathema. "There are no ties in baseball." NickG, *Tie Goes to the Runner?*, UmpireBible (Sept. 6, 2017), https://tinyurl.com/y4j69v5u; *see* Mark Dewdney, *"Come on, Blue: Tie Goes to the Runner!" No, It Does Not*, Bleacher Report (July 27, 2009), https://tinyurl.com/y4zfe4e3; *cf. Ortiz*, 274 F.3d at 1365 (deeming this a rule of "sandlot baseball" only); *Gilbert*, 1 Vet. App. at 56 (analogizing to the "tie goes to the runner rule" while noting that "there is no such formal Major League rule"). The player must beat the ball to the base to be called safe. *See* Major League Baseball Playing Rules Committee, Official Baseball Rules § 5.06(a)(1) (2019 ed.).

A tie may not be contrary to the articles of faith of veterans' benefits, but in practice the probability of a tie is nearly as remote. It is always possible to characterize the evidence as slightly more in one

party's favor than the other. These are subjective judgments, not mathematical equations or physical observations. And the narrowness of the "equal balance" or "equipoise" standard provides VA examiners, and the VA employees who make up the Board, plenty of latitude to impose the actual, affirmative preponderance burden borne by baseball players on veterans' benefits claimants as well. And their judgments about the balance of evidence are reviewed by the Veterans Court only for clear error (and by this Court even more narrowly). *See Mariano v. Principi*, 17 Vet. App. 305, 313 (2003); 38 U.S.C. § 7292(d). In practice, there is no guarantee under *Ortiz* that veterans truly are receiving the benefit of any doubt. And the stakes are much higher than in sandlot baseball.

Section 5107(b) is meant to give veterans the benefit of evidentiary uncertainty. In codifying that provision, "Congress recognized that veterans should not have to fight for benefits from the very government they once risked their lives to defend." *Procopio*, 913 F.3d at 1387 (O'Malley, J., concurring) (addressing 38 U.S.C. § 1116, which gives veterans the benefit of scientific uncertainty). But *Ortiz*'s unduly narrow interpretation of Congress's statute requires veterans to

do exactly that.  This Court should correct the error and relieve them of that burden.

## CONCLUSION

The Court should clarify or overrule its decision in *Ortiz* and make clear that § 5107(b) provides claimants the benefit of the doubt when the evidence for and against a particular issue is approximately balanced, even if not evenly balanced.

November 2, 2020

Respectfully submitted,

*/s/ Melanie L. Bostwick*

John B. Wells
MILITARY-VETERANS ADVOCACY INC.
P.O. Box 5235
Slidell, LA  70469-5235

Melanie L. Bostwick
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

*Counsel for Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. Cir. R. 29(b) and Fed. Cir. R. 32(b), because this brief contains 4387 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Amicus Curiae*